UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

KEVIN P. O'NEILL,

          Petitioner,

        v.                            Case No. 04-CV-461

UNITED STATES OF AMERICA,

          Respondent.

_____

## ORDER

Before the court is  Kevin O'Neill's ("O'Neill") petition under 28 U.S.C. § 2255

to vacate, set-aside, or correct the federal sentence he is currently serving.  This

matter has been fully briefed and is now ready for decision.  For the reasons set

forth below, O'Neill's  petition will be denied.

## BACKGROUND

On November 11, 1998, a grand jury sitting in this district returned a

superseding indictment charging O'Neill, along with 16 other co-defendants, with

Racketeer Influenced and Corrupt Organizations ("RICO") offenses, RICO

conspiracy offenses, drug conspiracy offenses, assault with a dangerous weapon

offenses, and the interstate transportation of explosives with intent to kill. (*See*

*United States v. O'Neill, et al.*, Case No. 97-CR-98, November 11, 1998 Superseding

Indictment, Docket # 793.)  Specifically, O'Neill was charged at counts one through

three with violations of 18 U.S.C. §§ 1962 (c)  and (d), 21 U.S.C. §§ 841(a)(1), 846,

and 18 U.S.C. § 2; and at counts five through seven with violations of 18 U.S.C. § 1959 (a)(3) and 18 U.S.C. § 844(d). O'Neill pled not guilty to each of these offenses, and after several rounds of pretrial motions, he proceeded to trial. On June 15, 2000, he was found guilty on all counts. He was sentenced to a term of life imprisonment as to counts one and two; three concurrent 240-month terms as to counts three, five, and six; and one 120-month sentence as to count seven. Each of these counts was ordered to run concurrent for a total term of life imprisonment. O'Neill appealed to the Seventh Circuit Court of Appeals, which affirmed his conviction and sentence. *United States v. Warneke*, 310 F.3d 542 (7th Cir. 2002). He then petitioned for rehearing en banc and for writ of certiorari to the Supreme Court, both of which were denied. *See O'Neill v. United States*, 538 U.S. 1035 (2003).

O'Neill's original petition sets forth 11 grounds in which he argues he is entitled to relief under § 2255. At grounds one through four, O'Neill contends he was deprived the effective assistance of counsel; at ground five he argues he was deprived of constitutional protections due to inadequate grand jury proceedings; at ground six he argues the court lacked subject matter jurisdiction to convict him; ground seven alleges the government withheld pertinent exculpatory materials; at ground eight he argues his sentence constitutes double jeopardy; at ground nine he argues that the indictment was constructively amended in violation of his constitutional rights; at ground ten he argues that the court was without subject

Case 2:04-cv-00461-JPS   Filed 07/11/07   Page 2 of 44   Document 31

matter jurisdiction to impose a sentence; and at ground eleven, he revisits the argument that he was deprived the effective assistance of counsel. (*See O'Neill v. United States*, Case No. 04-CV-461 Petition at Docket # 3) (hereinafter "O'Neill's Petition") On July 26, 2004, O'Neill filed an amended brief adding a twelfth ground where he claims his appellate counsel was ineffective. ( *O'Neill v. United States*, Case No. 04-CV-461 Docket # 6.) Additionally, O'Neill filed several requests and motions during the pendency of his petition: a request for judicial notice (*Id.* at Docket # 10); a motion for an extension of time to amend his petition (*Id.* at Docket # 11); a motion for a preliminary injunction to preserve evidence (*Id.* at Docket # 18); and two subsequent requests for judicial notice (*Id.* at Docket ## 20 and 21).The government filed a response to O'Neill's petition and argued it should be denied in its entirety. (*Id.* at Docket # 15.) Lastly, O'Neill filed a motion to supplement based upon newly discovered evidence. (*Id.* at Docket # 25.)

## ANALYSIS

Section 2255 provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the ground that his sentence was imposed in violation of the Constitution or the laws of the United States. To receive relief under section 2255, a petitioner must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979). The Seventh Circuit has also articulated that the substance of the petition takes precedence over its form, and

Case 2:04-cv-00461-JPS   Filed 07/11/07   Page 3 of 44   Document 31

petitions that arise under section 2255 are properly treated as such. *Guyton v. United States*, 453 F.3d 425 (7th Cir. 2006). O'Neill's petition clearly alleges that his sentence was imposed in violation of his Sixth Amendment rights along with other constitutionally protected rights, and the court notes at the outset it falls classically within the purview of section 2255 petitions.

## I.    Ineffective Assistance of Counsel

At grounds one through four of his petition, O'Neill argues he suffered ineffective assistance of counsel in violation of the Sixth Amendment. At grounds one through three, his ineffective assistance of counsel arguments are structured into complaints that his trial attorney, William Marquis ("Marquis"), failed to competently litigate motions to suppress Title III evidence; that Marquis failed to properly object to the government's eavesdropping devices that O'Neill argues were installed in violation of Title III; and finally, that Marquis failed to properly investigate applicable federal laws and regulations regarding the eavesdropping devices. (*See* O'Neill's Petition 4-44.) At ground four, O'Neill argues that Marquis was ineffective for failing to investigate and properly impeach a government informant. (*Id.* at 52.)

To establish that he was deprived of his right to effective counsel, O'Neill must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 695 (1984). When evaluating the attorney's

-4-

conduct, the court is "highly deferential" towards counsel, and there is a presumption that the attorney performed within the bounds of a wide range of reasonable professional assistance. *Id.* at. 669; *see also United States v. Holman*, 314 F.3d 837 (7th Cir. 2002). Thus, to meet this high burden, O'Neill must demonstrate that he suffered "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. As will be set forth below, O'Neill is unable to satisfy either prong of the *Strickland* standard; therefore, he is not entitled to relief for ineffective assistance of counsel.

### A. Ground One

At ground one, O'Neill argues that Marquis was ineffective because he failed to competently litigate the Title III motions to suppress. O'Neill attests that Marquis' performance was deficient because he failed to make the right arguments to secure suppression of the evidence and argues that but for the admission of this evidence, there likely would have been a different outcome at trial. O'Neill's petition further argues that Marquis was ineffective because he "incoherently argued that the warrantless installation of listening devices . . . violated the Fourth Amendment, Title III and *Franks v. Delaware*, 438 U.S. 154 (1978)." (O'Neill's Petition 4.) O'Neill states that Marquis' representation on these motions evidences a "startling ignorance of the law," and but for Marquis' missteps, the motions to suppress Title III evidence would have been meritorious. (*Id.* at 5.) Additionally, O'Neill attempts to set forth what Marquis should have argued: that a confidential informant was an

-5-

instrument or agent of the government; the placement of listening devices into O'Neill's home violated his right to privacy; and finally, that the placement of the listening devices within O'Neill's home was an "unreasonable" violation of O'Neill's constitutional rights.

O'Neill's arguments fail for a variety of reasons. First, and perhaps most significantly, it has generally been held that questions or issues previously considered on direct appeal from a federal prisoner's conviction cannot be reconsidered on a motion brought under § 2255. 10 A.L.R. Fed. 724; *see also United States v. Joiner*, 847 F. Supp. 604, 608 (N.D. Ill. 1994) (citing *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)). In his own arguments, O'Neill concedes that the Title III suppression matters were brought before the trial and appellate courts. Thus, many of the issues that O'Neill raises at ground one are thinly veiled revisits to similar issues that were raised and resolved both during the pretrial stages of O'Neill's case and on appeal.

The record at the pre-trial stages of this case established that during the early months of 1995, Patricia Wolf ("P. Wolf"), a confidential informant cooperating with the government, caused the placement of monitoring devices into her own home as well as O'Neill's. Due to P. Wolf's friendship with O'Neill's girlfriend and then-roommate, these entries and placements were done non-surreptitiously. The record also clearly established that these monitoring devices ("bugs" placed in household lamps) were installed in O'Neill's home prior to the government obtaining

-6-

authorization to intercept conversations. Also prior to receiving Title III authorization, federal agents tested the monitoring devices to discern whether or not they had been turned on; a signal received from the lamp indicated that they had. After this installation and test, proper Title III authorization was obtained, but it was not disclosed to the authorizing judicial officer that listening devices were already in place. However, and significantly for Fourth Amendment purposes, after numerous motions and a lengthy hearing, Magistrate Judge William E. Callahan, Jr., the judicial officer presiding over the pretrial stages of this prosecution, found that no evidence from the bugged lamps was used or seized prior to court authorization of the wiretaps.

The record also established that Marquis launched a vigorous defense on behalf of O'Neill; indeed, he brought forth motions and objections at every round of pretrial litigation, and similarly continued his defense in post-trial motions. Specifically, he objected to the Title III evidence on the following grounds: that the interceptions violated the U.S. Constitution and relevant federal statutes; that there was not proper minimization within the definition of Title III; and that the Title III statutory restrictions on eavesdropping were not properly followed. (*See* June 3, 1998 Magistrate's Recommendation and Order, Docket # 619.) In addition to his own filings, Marquis also joined the motions and objections of several of his co-defendants. Indeed, O'Neill concedes that his attorney raised several of the Title III matters he attempts to litigate in his petition, and he further recognizes that these were all matters that were considered at the appellate level.

Case 2:04-cv-00461-JPS   Filed 07/11/07   Page 7 of 44   Document 31

Given this backdrop, the court is obliged to deny O'Neill's petition on ground one because these matters were litigated at the trial level and also on appeal. As noted above, claims that were raised on direct appeal cannot ordinarily be raised again on collateral review. *See White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) ("invoking the doctrine of the law of the case, the courts, including our court, forbid a prisoner to re-litigate in a collateral proceeding an issue that was decided on his direct appeal."); *see also Peoples v. United States*, 403 F.3d 844, 847 (7th Cir). There are exceptions to this general bar of relitigation, and the Seventh Circuit has articulated once the "decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *White*, 371 F.3d at 902 (citing *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)). Although these exceptions are broad, none apply to O'Neill's claim. It is clear that no subsequent trial produced substantially different evidence, and the court is not aware of any controlling authority that has since made a contrary decision of law applicable to the issue, and given that these issues were affirmed on appeal, O'Neill is unable to assert that the prior decisions of the court were clearly erroneous.

-8-

Furthermore, even if the court were to consider O'Neill's arguments on the merits, he would also be unsuccessful because he is unable to demonstrate either prong of the *Strickland* standard. O'Neill is hardly able to state that Marquis performance fell below the objective standard of reasonableness to demonstrate ineffective assistance of counsel. To be sure, Marquis did file suppression motions, and the arguments Marquis set forth, both in motion and objection form, were logical and well-reasoned. He demonstrated exceptionally thorough knowledge of the applicable law and facts of the case. The arguments Marquis fleshed out challenged the Title III authorizations in the most logical and realistic way possible. From the record before the court, there is simply no showing of deficiency on behalf of Marquis and his representation for the suppression motions.

Moreover, O'Neill is unable to demonstrate prejudice, the second prong of *Strickland,* in his argument that Marquis did not properly litigate the suppression matters. In affirming the conviction and sentence, the Seventh Circuit determined that P. Wolf's placement of the bugged lamps into O'Neill's residence did not violate the Fourth Amendment. *See United States v. Warneke,* 310 F.3d 542 (2002). Judge Easterbrook, speaking for the Seventh Circuit stated, "[t]he installation of the bugs did not violate the fourth amendment: the Constitution does not protect criminals against the risk that their associates will assist the police." *Id.* at 545 (citing *Hoffa v. United States*, 385 U.S. 293, 300-03, 310-12,(1966)). The suppression issue turned on not whether the listening devices had been prematurely or

-9-

surreptitiously placed with the help of cooperating witnesses, but rather on whether there had been any impermissible interceptions of conversations prior to the court's order. Thus, even if Marquis had followed, *verbatim*, O'Neill's instructions on what to present in a motion to suppress, the result would have been the same because there was no Fourth Amendment violation without an impermissible interception; and this thoroughly litigated issue was correctly resolved on appeal. Accordingly, O'Neill is not entitled to relief at ground one of his petition.

## B.    Ground Two

At ground two, O'Neill revisits many of the arguments he brought forth at ground one; rather than framing his arguments as violating the Constitution, he simply restates them as violating Title III operating procedures. At this ground, O'Neill claims that Marquis was ineffective because he failed to establish that the government violated the statutory requirements of Title III, and therefore, evidence obtained through Title III interceptions must be suppressed. O'Neill also claims that Marquis was ignorant of the statutory and case law. Once again, O'Neill is unable to demonstrate either prong of the *Strickland* standard, and he is not entitled to relief as to ground two.

Similar to the claims O'Neill raised in ground one of his petition, these matters have already been addressed on the trial and appellate levels. Marquis tirelessly argued that the evidence obtained from the Title III interceptions should be suppressed due to non-compliance with the statute. Much of what O'Neill argues

at ground two was brought up extensively in motions Marquis filed himself or motions brought by co-defendants in which he joined. A non-exhaustive list of Marquis' arguments include: (1) that the government failed to show necessity under the Title III statute; (2) the government failed to minimize interceptions as required by 18 U.S.C. § 2518(5); and (3) the "bugged" lamp placed in O'Neill's home prior to authorization violated Title III. (*See* June 3, 1998 Magistrate's Recommendation and Order, Docket # 619, 2-55.) These matters were resolved against O'Neill at the district and appellate levels, and he does not provide the court with any authority as to why they should now be revisited. *See White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004).

Also similar to O'Neill's claims at ground one, his arguments at ground two would fail even if the court were to consider the claims on the merits. As part of his argument, O'Neill sets forth the Title III requirements and their accompanying grounds for suppression. The provisions of Title III covering suppression state:

> [a]ny aggrieved person . . . may move to suppress the contents of any wire or oral communication intercepted on the grounds that (I) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518 (10)(a). As previous orders of the court have indicated, none of these three circumstances occurred, and O'Neill was not entitled to suppression.

First, there were no communications that were unlawfully intercepted. The matter of the pre-installation lamp bugs was unequivocally resolved against O'Neill, and no court found that this violated Title III provisions. After a lengthy hearing on this matter, Magistrate Callahan found that there were no unlawful interception prior to the authorization, and therefore, no Fourth Amendment or Title III violation. Second, O'Neill does not, nor would he be able to make a viable argument that the order of authorization or approval for the interception was insufficient on its face. The orders were properly supervised at the district court level.

Finally, the only non-conforming interception outside of the scope of the original authorization has already been resolved in favor of O'Neill. (*See infra* pp. 16-18.) During the pretrial stages of this case, O'Neill filed a motion arguing that evidence gathered through the surveillance related to crimes that were not specified in the authorizing orders and for which the government had not sought subsequent authorization. As this court previously noted, "[g]overnment agents must seek subsequent authorization for wiretaps relating to crimes not specified in the original authorizing order before seeking an indictment regardless of the similarity between crimes that are specified in the original order and those that are not." *United States v. O'Neill,* 27 F. Supp. 2d 1121, 1127 (E.D. Wis. 1998) (citing *United States v. Brodson*, 528 F.2d 214 (7th Cir. 1975)). Due to the government's non-compliance with § 2517(5), the court ordered the government to seek subsequent authorization to add the additional offenses charged in the first indictment to the wiretap order,

-12-

dismiss the first indictment against the defendants, and pursue a superseding indictment before a second and uninfected grand jury. *Id.* at 1129.

Therefore, O'Neill's arguments fail for two reasons. First, as previously noted, this court will not consider duplicate arguments that have been previously resolved at prior stages. *United States v. Joiner*, 847 F. Supp. 604, 608 (N.D. Ill. 1994). Second, when the court reviews O'Neill's claims on the merits, it finds that he would not be able to satisfy either of the *Strickland* prongs necessary to establish a violation of his right to effective counsel. Thorough review of the record reveals that there was no violation of Title III requirements, and Marquis' performance on the Title III motions was not subpar in any regard.

**C.    Ground Three**

At ground three, O'Neill argues that Marquis was incompetent because he failed to familiarize himself with relevant statutory and agency regulations regarding Title III operating procedures. However, Marquis' filings evidenced a very thorough understanding of the applicable law, and objecting on administrative grounds would not have been successful. The Seventh Circuit, following a United States Supreme Court holding, has stated "the federal exclusionary rule, which forbids the use of evidence obtained in violation of the Fourth or Fifth Amendments, does not extend to violations of statutes and regulations." *United States v. Kontny,* 238 F.3d 815, 818 (7th Cir. 2001) (citing *United States v. Caceres*, 440 U.S. 741, 755, 733 (1979)). Therefore, as to ground three, O'Neill is not able to show that Marquis was deficient,

-13-

nor is he able to establish the "prejudice" prong of the *Strickland* standard because any objections on the basis that proper administrative procedures were not followed would not have resulted in any suppression relief for O'Neill.

### D.    Ground Four

At ground four, O'Neill argues that Marquis was ineffective for failing to properly investigate and impeach government witness Mark Quinn ("Quinn"). Quinn was an undercover government cooperator who recorded conversations with O'Neill's co-defendant, Leslie John Jensen. O'Neill asserts that Quinn tampered with a tape and altered a recorded conversation that was played at trial. O'Neill claims that Marquis was ineffective for his failure to investigate this matter in spite of O'Neill's urging, and for failing to call a witness O'Neill believes could have attested to the tampering of the tape. O'Neill also criticizes Marquis for allowing the tape to be admitted into evidence, and for what he characterizes as ineffective cross-examination of a co-defendant's expert witness, Steven Cain ("Cain").

O'Neill contends that the recorded conversation he references involved Quinn and co-defendant Jensen talking at a La Crosse, Wisconsin bar. During the course of the conversation, O'Neill claims that the background sounds on the tape jump from loud music and talking to the sounds of television. He also claims that when he later discussed this with Jensen, he was told that at the point of the alleged "switch" in the tape, Quinn had attacked a fellow bar patron. O'Neill attempts to corroborate this story and states that he, on his own accord, hired a private

-14-

investigator in an attempt to locate the bar patron (who he now identifies as Edward Shawley) Quinn attacked. O'Neill claims that this individual should have been called by Marquis to testify because it would have significantly impeached Quinn's testimony.

The trial transcripts reflect that Quinn was questioned on numerous occasions, both by the government and the defense, as to the mysterious "skip" in the tape, and if he had tampered with the tape in any way, or turned the tape off to commit a crime. On direct examination, the government questioned Quinn about whether he had altered the tape, or if he had listened to the tapes and reordered over any; Quinn responded that he had not, and that he had no ability to listen to the tapes himself. (*See* April 24, 2000 Trial Tr. at 110-11.) Marquis himself also questioned Quinn about the supposed gap in the tape, and inquired if he turned off or tampered with it to cover up a battery he committed. (*See* April 26, 2000 Trial Tr. at 684-87.) Similarly, other defense attorneys questioned Quinn about the tape and if he had altered it or if he was aware of any tape malfunctions. (*See* April 26, 2000 Trial Tr. at 719-20.) Quinn was steadfast in his responses that he had not done so. *(See id.)*

Just as the choice to call a witness is a strategic decision subject to review under the highly deferential *Strickland* standard, the decision not to call a witness is similarly a strategic decision held to that same standard. *See Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000). An attorney's trial strategy is subject to a highly deferential standard under the *Strickland* analysis; indeed, "usually, counsel's

-15-

decision not to call a witness is a tactical decision not subject to review." *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994). Furthermore, attacking an attorney's investigation and subsequent choice to pursue one line of defense over another is given substantial deference on review. *See United States v. Balanzo*, 916 F.2d 1273, 1294 (7th Cir. 1990) (noting that "once defense counsel conducts a reasonable investigation into all lines of possible defenses, counsel's strategic choice to pursue one line to the exclusion of others is rarely second-guessed on appeal"). As discussed below, the court finds that Marquis' failure to call the bar patron or an additional expert forensic witness did not rise to a level of ineffective assistance, and O'Neill is not entitled to relief on this ground.

First, it's questionable if the testimony of this individual would even be admissible, as its relevance to the underlying issues is attenuated at best. The jurors were able to hear testimony regarding Quinn's character and that he had been involved in past crimes; they were able to weigh this against his testimony and ascertain for themselves if he was telling the truth. During Quinn's testimony, the government elucidated the fact that due to Quinn's cooperation with law enforcement, he would be receiving consideration for favorable treatment by the government for criminal charges he was facing. The jurors were well apprised of the potential weaknesses of Quinn's testimony, and calling more witnesses as further impeachment would not have been helpful in any way. Moreover, had O'Neill called his own expert forensic witness, such testimony would have been cumulative, as Cain had already been called as a defense witness.

Finally, there is no merit to O'Neill's argument that Marquis' representation was ineffective because he failed to object to the admission of the tapes under Rule 403 of the Federal Rules of Evidence. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. O'Neill does not explain how the tape evidence was any of the things that would preclude admission under Rule 403. Indeed, the court agrees with the government's argument that the tape evidence corroborated other evidence at trial and was highly probative and relevant. Any evidentiary challenges under Rule 403 would likely have failed, leaving the court to conclude that Marquis' representation was not deficient in any way for not challenging the evidence in this manner.

## II. Jury-related Improprieties

At ground five, of his petition, O'Neill attacks the integrity of the grand jury for two reasons. First, O'Neill argues the handling of the superseding indictment violated his constitutional rights. In addition to this claim, he requests disclosure of the grand jury transcripts in this case. Second, O'Neill argues that the exclusion of Native Americans from the jury panel violated his Fourteenth Amendment rights.

### A. O'Neill's Superseding Indictment Challenges

In an October 19, 1998 order, this court dismissed the original indictment pursuant to *United States v. Bronson*, 528 F.2d 214 (7th Cir. 1975), because it found

Case 2:04-cv-00461-JPS   Filed 07/11/07   Page 17 of 44   Document 31

that the government did not apply for 18 U.S.C. § 2517(5) authorization to use wiretap evidence related to crimes not specified in the original authorizing order. *See United States v. Kevin O'Neill*, 27 F. Supp. 2d 1121, 1128-29 (E.D. Wis. 1998). The court ordered the government to seek subsequent authorization to add the additional offenses charged in the indictment; dismiss the original indictment; and pursue a superseding indictment before a second grand jury. *Id.* Because these defects were technical and easily curable, this court ordered the defendants detained in the interim of the dismissal and filing of the superseding indictment. The government sought the appropriate authorization, and as expected, a superseding indictment nearly identical to the original indictment was handed up on November 10, 1998.

O'Neill argues that the second grand jury that returned the superseding indictment in this case was corrupted for several reasons. First, because the grand jury was misled in reference to the procedural posture of the case; second, because they were misled into thinking the defendants were still under the thumb of the original indictment; and third, because they were allowed to review testimony from the first grand jury. In addition, O'Neill sets forth another ineffective assistance of counsel argument and contends that his attorney's representation and litigation on these matters fell below the *Strickland* standard.

O'Neill's arguments about the integrity of the grand jury and its return of the superseding indictment were thoroughly addressed by Magistrate Callahan. In an *in camera* review, the magistrate found the second grand jury to be free of any of the "taint" O'Neill suggests. First, none of the jurors empaneled for the return of the

superseding indictment were empaneled on the earlier grand jury. Second, pursuant to an order by Judge Charles Clevert, the government was allowed to present any evidence relating to the Title III interceptions, including evidence presented to the first grand jury. This permission follows the holding in *United States v. Puglia*, 8 F.3d 478, 482 (7th Cir. 1993). In *Puglia*, the court held that the grand jury may consider a broad range of evidence, including previously-suppressed evidence, incompetent evidence, and even rumors. *Id.* It is also important to note, as the *Puglia* court did, that the general constitutional protections afforded to defendants in criminal proceedings do not apply to grand jury proceedings due to the nature and purpose of the grand jury. *Id.* The grand jury is, after all, an accusatory body, not an adjudicatory one. *Id.*

It is also not necessary to allow O'Neill a fully disclosed review of the grand jury evidence, transcripts, and testimony, nor was his attorney ineffective for not securing this information. As a general rule, the happenings of grand juries are secretive. *See* Fed. R. Crim. P. 6. Parties seeking grand jury transcripts under Rule 6(e) must show that the matter they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only materials so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations. *Id.* O'Neill has not established any of the requirements of Rule 6 as he has not submitted any specific need for them; he only

-19-

makes a blanket request for grand jury transcripts, which is simply inadequate. Furthermore, a judicial officer has already reviewed the materials and concluded that the second grand jury functioned in the matter intended by the Fifth Amendment; the court finds no error in the functioning of the second grand jury. As such, O'Neill has not shown any grand jury improprieties in the handling of the superseding indictment, and he is not entitled to the release of the grand jury transcripts under Rule 6. Furthermore, because O'Neill has not shown any impropriety, he would be unable to show that Marquis' performance was inadequate or subpar as required in the initial prong of *Strickland*. Thus, he has not demonstrated ineffective assistance of counsel on this ground.

### B. O'Neill's Constitutional Challenges to the Venire Panel Demographics

Second, O'Neill argues that the exclusion of Native Americans from the grand jury and petite jury service deprived him of his constitutional rights. Specifically, O'Neill states that "[n]o Native American was called for grand jury service, or as a foreman, during the period grand jurors were summoned for service to hear evidence in connection with the indictment returned against Petitioner." (O'Neill's petition 79). O'Neill argues that the Eastern District's plan violates his right to a jury composed of a fair cross-section of the community. However, O'Neill's categorization and criticism of the Eastern District's venire plan is misguided, and as a result, his reasoning and arguments as to why the plan fails constitutionally are flawed.

-20-

The Seventh Circuit addressed the constitutional implications of the Eastern District's jury selection process, and found that the procedures excluding all Indians who live on reservations from venire panels did not violate the Sixth Amendment or Equal Protection. *United States v. Raszkiewicz*, 169 F.3d 459, 462 (7th Cir. 1999). In *Raszkiewicz,* the defendant challenged the representativeness of the jury selection process in his case. The procedure for selecting jurors in the Eastern District distinguishes between "reservation Indians" and "urban Indians"; Indians living on reservations are excluded from venire panels, but "urban Indians," that is, Native Americans living off of the reservation, are not. Raszkiewicz challenged this practice and argued it violated his constitutional right to a fair cross-section of the community because no reservation Indians were included in his venire panel. *Id.* Judge Cummings, writing for the Seventh Circuit, stated although "one might doubt the wisdom and reasonableness of the Eastern District's policy, Raszkiewicz has not shown that the defects of that policy rise to a constitutional level." *Id.*

The *Raszkiewicz* court further held that for a defendant to make a prima facie case that the fair cross-section requirement has been violated, a defendant must show that: (1) the group allegedly excluded is a distinctive part of the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under representation is due to systematic exclusion of the group in the jury selection process. Within this framework, O'Neill's argument fails for several

reasons. Most importantly, the Seventh Circuit in *Raszkiewicz* recognized that Native Americans did in fact serve on jury panels in the Eastern District; they just weren't selected from Indian reservations. Thus, O'Neill's argument that no Native American served on a jury between 1992 and 1998 ignores reality and disavows previous findings of the Seventh Circuit; because, he cannot allege that a group of individuals was excluded from the venire panel. Next, O'Neill's argument fails because *Raszkiewicz* determined that Native Americans were not a "distinctive part of the community" and thus O'Neill isn't able to establish even the first prong of the prima facie test. Accordingly, the court is constrained to deny O'Neill's petition on this ground.

## III.    Jurisdictional Challenges

At ground six, O'Neill raises a variety of arguments alleging that the court did not have subject matter jurisdiction over the offenses charged in the indictment. Each of these arguments will be discussed below, although the court notes at the outset that none of his claims have merit.

O'Neill begins by arguing that the United States Supreme Court decisions *Apprendi v. New Jersey,* 530 U.S. 466 (2000) and *Jones v. United States*, 526 U.S. 227 (1999) support dismissal of the indictment. Although O'Neill is not entirely clear in his explanation that these cases warrant dismissal of the indictment, neither of these decisions provide support to this contention in the manner he suggests. In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum

must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Similarly, *Jones* held that each element of an offense must be charged in the indictment, submitted to a jury, and proven by the government beyond a reasonable doubt. As the Seventh Circuit held in affirming O'Neill's conviction, the *Apprendi*, and similarly, *Jones* requirements were satisfied. *See United States v. Warneke*, 310 F.3d 542, 549 (7th Cir. 2002) (holding that special verdict forms asking jurors to determine to beyond a reasonable doubt whether the circumstances that raised the maximum punishment cured *Apprendi* concerns, even though the circumstances raising the punishment were not charged in the indictment). Equally important, neither of these cases relate to the subject matter jurisdiction of the court.

Next, O'Neill argues that the court lacked subject matter jurisdiction to impose his sentence at counts one and two of the indictment because these counts relied on predicate acts which were barred by the statute of limitations. Although the general statute of limitations for noncapital federal offenses is five years, pursuant to 18 U.S.C. § 3282, it is only required that each defendant must have committed at least one act of racketeering within five years of the date of the indictment for the statute of limitations to be satisfied. 18 U.S.C. § 3282; *United States v. Maloney,* 71 F.3d 645, 662 (7th Cir. 1995). Here, the statutory time frame was satisfied because each racketeering act occurred between 1993 and 1995, which is well within the applicable statutory time frame because the original indictment was returned in 1997. Thus, there was no statute of limitations violation, and O'Neill's argument is without merit.

Third, O'Neill argues his Speedy Trial Act rights, as set forth in 18 U.S.C. § 3161, were violated. The Speedy Trial Act of 1974 generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance. *See* 18 U.S.C. § 3161(c)(1). However, certain periods of time between arraignment and trial are excluded from the speedy trial calculation. 18 U.S.C. § 3161(h). Importantly, "[a]ny period of delay resulting in a continuance . . .[is excluded] if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). "Absent legal error, exclusions of time cannot be reversed except when there is an abuse of discretion by the court and a showing of actual prejudice." *United States v. Hemmings*, 258 F.3d 587, 593 (7th Cir. 2001).

The record conclusively shows that the requisite finding was made by Magistrate Callahan in a July 1, 1997 scheduling order stating that the case was "so unusual and so complex," both due to the number of defendants and the nature of the charges that it was unreasonable to expect adequate preparation within the time limits of section 1861; Magistrate Callahan further granted a continuance of time limits and stated such extension was granted "on the grounds that the ends of justice served by taking such action outweigh the best interests of the public and the defendants in a speedy trial." (July 1, 1997 Scheduling Order). The speedy trial clock was also tolled at various times during the briefing of motions and the

-24-

defendants' interlocutory appeal of the superseding indictment. Moreover, the Speedy Trial Act is not self-executing; a defendant must move for a dismissal. Congress has specifically provided that failure to move for dismissal before trial constitutes a waiver of the right to dismissal. 18 U.S.C. § 3162(a)(2); *see also United States v. Baldwin*, 959 F. Supp. 1012, 1016-17 (S.D. Ind. 1997). Therefore, Judge Callahan's findings, coupled with the tolling of certain time periods, and applicable Seventh Circuit law, provide that there was no speedy trial violation.

O'Neill's next arguments under ground six allege that the RICO and non-RICO counts did not have the requisite interstate nexus to confer jurisdiction upon the court. O'Neill claims that count six of the superseding indictment, which charges violations of 18 U.S.C. § 844, has no connection to interstate commerce because there is no reference to the type of explosive or if the explosive was transported. O'Neill is mistaken; 18 U.S.C. § 844(d) unequivocally sets forth the requisite federal nexus and states, and in pertinent part it reads, "[w]hoever transports or receives, or attempts to transport or receive, *in interstate or foreign commerce* any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate. . ." 18 U.S.C. § 844(d) (emphasis added). Clearly, the interstate requirements are set forth within the statute itself, and O'Neill's arguments that the court didn't have jurisdiction over count six of the superseding indictment fail. Additionally, O'Neill's argument that the individual predicate acts do not affect interstate commerce is irrelevant. The Seventh Circuit has held that individual predicate acts do not

-25-

necessarily need to affect interstate commerce; it's only the enterprise that must affect interstate commerce to satisfy jurisdiction. *See United States v. Farmer,* 924 F.2d 647, 651 (7th Cir. 1991).

Next, O'Neill urges that the superseding indictment failed to set forth elements of 18 U.S.C. § 2, and is "fatally flawed" because of this alleged shortcoming. This statute does not define a crime, it only sets forth when a defendant may be punishable as a principle. *See* 18 U.S.C. § 2. Contrary to O'Neill's view, there is no requirement that the indictment set forth the elements of 18 U.S.C. § 2, therefore, it was not "fatally flawed" in any of the ways O'Neill suggests. O'Neill also argues that this somehow converts the indictment into being multiplicitous and duplicitous. An indictment is duplicitous if separate offenses are charged in a single count in the indictment. *United States v. Smith,* 26 F.3d 739, 753 (7th Cir. 1993). An indictment is multiplicitous if a single offense is charged in multiple counts of an indictment. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995). O'Neill's indictment was neither; each of the counts he was charged with in the superseding indictment charged separate offenses at separate counts. A claim of multiplicity cannot succeed "unless the charged offenses are the same in fact and in law." *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003). Accordingly, he not entitled to relief on this ground.

O'Neill also argues that the court did not have subject matter jurisdiction over the offenses charged in the superseding indictment because certain predicate acts

Case 2:04-cv-00461-JPS   Filed 07/11/07   Page 26 of 44   Document 31

in the indictment violate *ex post facto* provisions of the Constitution. Article I, Section 10 of the United States Constitution prohibits a state from passing any "*ex post facto* Law." U.S. Const. amend. I § 10. Case law has summarized this to mean the *ex post facto* provision prohibits conviction or punishment in the following three circumstances: (1) any statute that punishes as a crime an act previously committed that was innocent at the time it was done, (2) any statute that makes the punishment more burdensome after the commission of the crime, or (3) any statute that deprives an individual of a defense previously available during the commission of a crime. *See, e.g., Dobbert v. Florida,* 432 U.S. 282, 292 (1977). In contrast, it does not violate *ex post facto* provisions to impose criminal liability for an action that was lawful when it began and continued after a statute made such actions unlawful. *See, e.g., United States v. Couch*, 28 F.3d 711, 715 (7th Cir. 1994). Congress clearly contemplated this principle in enacting the RICO statute as a Senate Judiciary Committee Report stated:

> [o]ne act in the pattern must be engaged in after the effective date of the legislation. This avoids the prohibition against ex post facto laws, and bills of attainder. Anyone who has engaged in the prohibited activities before the effective date of the legislation is on prior notice that only one further act may trigger the increased penalties and new remedies of this chapter.

S. Rep. No. 91-617, at 158 (1969); *see also United States v. Campanale*, 518 F.2d 352, 364 (9th Cir. 1975). Thus, the *ex post facto* provisions are not violated by charging a racketeering act when the underlying conduct began before the act was

-27-

actually added to RICO, but continued after the act was added to the RICO statute. *See United States v. Alkins*, 925 F.2d 541, 548 (7th Cir. 1991) (holding "the application of a statute to [a crime] that began prior to, but continued after, the effective date of [the statute] does not violate the ex post facto clause") (internal citations omitted).

O'Neill also attacks the subject matter jurisdiction by alleging that the counts charging violations of 18 U.S.C. § 1959 must be dismissed because there is no requisite interstate nexus to that count. O'Neill is mistaken in his argument that 18 U.S.C. § 1959 lacks an interstate nexus or fails to charge a federal crime. Section 1959(a)(3) explicitly sets forth that:

> [w]hoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than twenty years or a fine under this title, or both.

18 U.S.C. § 1959(a)(3). Section 1959 then implicates federal jurisdiction and an interstate nexus by defining "enterprise" as a "group of individuals . . . which is engaged in, or the activities of which affect, interstate or foreign commerce." *Id.* The plain language of the statute invokes the necessary federal jurisdiction, and O'Neill's arguments that the court lacked subject matter jurisdiction fails.

**IV. Government Withholding of Material Evidence**

At ground seven, O'Neill argues that the handling of the Title III wiretaps used in this case violated his due process rights. He also requests an evidentiary hearing to be heard on this matter. Specifically, O'Neill argues that the government failed to disclose Mark Quinn's availability to act as an informant for the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), and that the government failed to disclose that Agent Robert Brown was discharged from the Title III investigation. As will be discussed below, O'Neill has not set forth adequately any reason why he is entitled to relief on this ground, nor has he established that he is entitled to an evidentiary hearing on this matter.

In the context of federal habeas petitions, a petitioner must make more than generalized allegations in support of a request for an evidentiary hearing. *See Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) (stating that bare allegations that are unsupported by specific facts to not provide grounds for holding an evidentiary hearing). However, O'Neill has not set forth any facts beyond bare allegations. In support of his position, O'Neill relies on affidavits which claim that there is newly discovered evidence that the government failed to disclose Mark Quinn as an available informant at the time they applied for the Title III intercept authorization. O'Neill submits an affidavit of a fellow inmate, Robert Ofcky ("Ofcky"), in which Ofcky avers he was asked but declined to be a government cooperator in an Indiana Field Office investigation. Ofcky goes on to state that he was told by

agents that if he chose to cooperate, he would be working with another individual in an attempt to infiltrate motorcycle clubs. Years later, Ofcky comes to surmise that this individual was Mark Quinn. These statements are not only speculative opinions of Ofcky, they're not corroborated in any way. Accordingly, the court is obliged to deny the request for a hearing.

Next, O'Neill argues that the government improperly failed to disclose the discharge of Robert Brown from the Title III task force. Similarly to his previous bare allegations, he claims that upon information and belief, Robert Brown was discharged from the Title III task force for disclosure violations. He claims had he previously known that Detective Brown had violated Title III policies and had been discharged for doing so, O'Neill would have called him as a witness. O'Neill further argues this information would have been material to suppression issues before the court. However, these statements are hardly more than guesswork on behalf of O'Neill, and such allegations that are void of any corroborated support do not warrant a hearing on the matter relating to the Title III investigation.

Additionally, these issues have already been visited by the court and resolved against O'Neill. His arguments essentially amount to allegations that the government did not meet the "necessity" requirement of Title III, and this issue was thoroughly resolved during the pretrial stages of the prosecution. (*See* June 3, 1998 Order, Docket # 619 at 10-26) (Magistrate Callahan's finding that the government complied with the Title III requirements to show necessity and exhaustion.) Moreover, the

matter of Quinn's possible availability as a confidential informant was also brought to the court's attention in post-conviction motions, and this too has already been resolved. In the August 25, 2000 order denying O'Neill's co-defendants motions for judgments of acquittal, the court considered a co-defendant's argument that Quinn's availability as a confidential informant undermined the government's necessity for the wiretaps and stated:

> Kruppstadt's argument fails to persuade the court. There is no evidence that the ATF knew of Quinn's desire to assist the government. Quinn apparently backed out of this initial foray into government service before it ever got started. Nor is Kruppstadt's lone allegation of an aborted effort to assist the government convincing.

(August 25, 2000 Order, Docket # 1619 at 47-48.) Accordingly, O'Neill has brought no new evidence or information to light, and the matters he does raise have already been resolved. He has not convinced the court that a hearing is necessary, and his petition is denied on this ground.

## V. Double Jeopardy Challenges

At ground eight of his petition, O'Neill alleges that the concurrent life sentences and the multiple special assessments imposed upon him constitute double jeopardy. As will be discussed below, neither of these aspects of his sentence constitute double jeopardy.

The Double Jeopardy Clause of the Fifth Amendment protects defendants from being tried and punished more than once for the same offense. The Double Jeopardy Clause has three basic protections: first, the clause prevents a subsequent

-31-

prosecution for the same offense after an acquittal; second, it prevents subsequent prosecutions for the same offense after a conviction; and third, it prevents multiple punishments for the same offense. *United States v. Wilson*, 420 U.S. 332, 342-43 (1975) (citing *North Carolina v. Pearce*, 395 U.S. 711(1969)). Relying on overlapping predicate acts to impose concurrent yet separate sentences will not offend the Double Jeopardy Clause. *See United States v. Morgano*, 39 F.3d 1358, 1369 (7th Cir. 1994). Concurrent terms of life imprisonment similarly do not offend double jeopardy. *See id; see also United States v. McCarter*, 406 F.3d 460, 463 (7th Cir. 2005) (holding "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended") (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). Likewise, the special assessments imposed upon O'Neill did not amount to double jeopardy. Title 18 of the United States Code at Section 3013 provides that the "court shall assess on any person convicted of an offense against the United States." This statutory requirement to order special assessments applies to each count of conviction; it does not constitute double jeopardy, and accordingly, O'Neill is not entitled to relief at ground eight.

## VI. Constructive Amendment of the Indictment

At ground nine, O'Neill alleges that the indictment was constructively amended by the trial court and the government. His argument is without merit. The Fifth Amendment states, "[n]o person shall be held to answer for a capital, or otherwise

Case 2:04-cv-00461-JPS   Filed 07/11/07   Page 32 of 44   Document 31

infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. This provision prohibits constructively amending an indictment at trial because the Fifth Amendment requires an indictment of a grand jury to guarantee that the allegations in the indictment and the proof at trial "match in order to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense." *United States v. Trennell,* 290 F.3d 881, 888-89 (7th Cir. 2002). A constructive amendment occurs when "the government . . . the court . . . or both, broadens the possible bases for conviction beyond those presented by the grand jury." *Id.* at 888 (quoting *United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998)).

O'Neill essentially argues that the government broadened the basis for his conviction by presenting evidence unlawfully obtained through Title III interceptions. This statement is simply inaccurate; the Title III issues in this case have been litigated *ad nauseum,* and the Seventh Circuit determined that no evidence was unlawfully obtained through Title III interceptions and his arguments to the contrary fail. *United States v. Warneke,* 310 F.3d 542 (7th Cir. 2002). O'Neill also attacks various definitions and phrasing of the jury instructions, but these issues were also resolved against him on appeal. *Id.* at 548 (noting "the language the district judge used [in the jury instructions] does not vitiate the conviction").

-33-

## VII.    Challenges to Subject Matter Jurisdiction

At ground ten, O'Neill once again claims the court was without subject matter jurisdiction in this case, and sets forth 13 reasons why the court did not have subject matter jurisdiction to sentence him, several claims which are similar to issues he raised in ground six.  As will be explained below, none the grounds provide relief for O'Neill.

First, O'Neill's argument that penalty provision must have been submitted to the jury is without merit because the Seventh Circuit resolved this issue on direct appeal.  Even though the indictment did not include all of the details that potentially affected the sentence, this court asked the jury to return special verdicts, one for each predicate act, and the Seventh Circuit held that this satisfied due process.  *See United States v. Warneke*, 310 F.3d 542, 549 (7th Cir. 2002).

Second, O'Neill's argument that the Doctrine of Lenity prohibits a term of imprisonment longer than 20 years is also without merit.  The Doctrine of Lenity requires that an ambiguity be resolved in the defendant's favor where  a "grievous ambiguity or uncertainty in the language and structure of the Act." *United States  v. Ranum,* 96 F.3d 1020, 1030 (7th Cir. 1996) (quoting *United States v. Neal,* 46 F.3d 1405, 1410 (7th Cir. 1995)).  However, 18 U.S.C. § 1963 contains no ambiguities because it clearly sets forth criminal conduct that will implicate the penalties.  As such, O'Neill's second argument that the court did not have subject matter jurisdiction to impose his sentence fails.

-34-

Third, O'Neill's argument that the sentence imposed for predicate acts 23 and 24 and counts three and four are similarly without merit because as discussed above, this court instructed the jurors to complete special forums regarding matters that would enhance penalties. *See Warnkeke,* 310 F.3d at 549.

Fourth, O'Neill's various arguments relating to count five are each without merit. Count five is not barred by double jeopardy, nor barred by the statute of limitations, nor does it fail to charge a federal offense as O'Neill is attempting to argue. O'Neill's attempt to show a double jeopardy violation by claiming that because facts of the offense used in count five were also used in counts one and two fails. A defendant is not held in double jeopardy if he is charged with multiple crimes that have different elements that arise from the same factual circumstances or evidence. *See Ohio v. Johnson*, 467 U.S. 493, 500 (1984). O'Neill has also failed to provide sound reason for why this count is barred by the statute of limitations. Pursuant to 18 U.S.C. § 3288, "[w]henever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, the new indictment shall not be barred by any statute of limitations." 18 U.S.C. § 3288. Finally, count five charges a federal crime because it contains the requisite "affecting interstate commerce" language necessary to federal jurisdiction. *See* 18 U.S.C. § 1959.

-35-

Fifth, O'Neill's arguments that counts six and seven must be vacated because they do not charge federal crimes are inaccurate. Counts six and seven charge a violation of 18 U.S.C. § 844(d), which states:

> Whoever transports or receives, or attempts to transport or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be imprisoned for not more than ten years, or fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not more than twenty years or fined under this title, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

18 U.S.C.§ 844(d). Clearly, the statutory language implicating the transport of explosives "in foreign or interstate commerce" satisfies the federal jurisdiction requirement. *Id.*

Sixth, O'Neill argues that the government failed to file an Information of Notice of Enhancement pursuant to 18 U.S.C. § 3559(c)(1-3); however, O'Neill was not sentenced pursuant to this statute and his argument need not be considered.

Seventh, O'Neill's arguments that his sentence was not purely concurrent because separate special assessments were imposed and that this imposition is duplicitous and violates double jeopardy. O'Neill's arguments are incorrect. In accordance with 18 U.S.C. § 3013, a defendant is to pay a special assessment for each count of conviction. The imposition of a special assessment for each count of conviction does not amount to a double jeopardy violation.

Eighth, as discussed above, O'Neill's claim that the drug sentence must be vacated for a failure to charge a drug quantity is without merit because the Seventh Circuit directly resolved this matter on appeal. *See United States v. Warneke,* 310 F.3d 542 (7th Cir. 2002).

Ninth, O'Neill argues that the sentences imposed for violations of 18 U.S.C. § 844 must be vacated because the indictment failed to set forth the type of explosive used. This argument is without merit because the type of explosive used is not an element of the offense and need not be set forth in the indictment. *See* 18 U.S.C. § 844; *see also* Fed. R. Crim. P. 7 (c).

Tenth, O'Neill argues that the court used the wrong United States Sentencing Guidelines Manual in calculating his sentencing range, and this violates the ex post facto clause. Section 1B1.11 of the United States Sentencing Guidelines Manual states that the "court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a) (2006). Furthermore, to obviate *ex post facto* concerns, the Guidelines Manual further directs that

> [i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

*Id.* at 1B1.11(b)(1). O'Neill has not set forth any reason suggesting that the guideline construct as applied to him violates the ex post facto clause; therefore, the court is obliged to deny him relief.

-37-

Eleventh, O'Neill's arguments that the fines and restitution were imposed in violation of statutory authority are, likewise, without merit. Most assuredly, there is clear statutory authority under 18 U.S.C. §§ 3556 and 3571 to impose a fine and restitution notwithstanding O'Neill's arguments to the contrary.

Twelfth, O'Neill's argues that the sentences imposed were in violation of the underlying state statutory limits. O'Neill is mistaken; he was charged, convicted, and sentenced to federal crimes, and, as discussed above, the federal statutory limits were fully satisfied and his argument is without merit.

Finally, O'Neill's thirteenth ground and argument that the court was without jurisdiction to forfeit the Outlaw clubhouses is without merit. Section 1963 of Title 18 of the United States Code provides that violations of 18 U.S.C. § 1962 shall result in punishments as outlined in section 1963. Aside from fines, and imprisonment, section 1963 provides for forfeiture of any real property. *See* 18 U.S.C. § 1963. Accordingly, the court had full statutory authority to order forfeiture of Outlaw clubhouse properties, and O'Neill's arguments provide no basis for relief.

## VIII.  Ground Eleven

Ground eleven of O'Neill's petition once again alleges ineffective assistance of counsel; however, at this juncture he argues Marquis was ineffective for failing to bring motions challenging the government's categorization of the Outlaw clubhouses and for failing to challenge the court's selection of alternate jurors. Finally, O'Neill charges that his appellate counsel was ineffective for similarly failing to challenge the court's selection of alternate jurors.

These claims are without merit, and the court first notes that the issue of forfeiture of the Outlaws' clubhouses has already been resolved. The federal criminal forfeiture statute states:

> [t]he court, in imposing a sentence on a defendant who has been found guilty of an offense described in section 1962 of this title or in title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 shall order, in addition to the sentence that is imposed pursuant to the provisions of section 3551, that the defendant forfeit property to the United States in accordance with the provisions of section 1963 of this title or section 413 of the Comprehensive Drug Abuse and Control Act of 1970.

18 U.S.C. § 3554. This forfeiture was also proper under the RICO forfeiture provision, which requires that forfeiture be ordered for any real property "which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962." The evidence at trial showed that the clubhouse afforded O'Neill a source of influence over the enterprise whose affairs he operated and conspired to operate in violation of the RICO statute. Thus, forfeiture was proper under 18 U.S.C. § 1963. O'Neill's arguments that Marquis was ineffective for failing to litigate the forfeiture of these properties fails; the properties were properly forfeited and Marquis' performance on this matter was not unreasonable or ineffective.

O'Neill also challenges the use of an alternate juror in this case violated his rights under Rule 24(c) of the Federal Rules of Criminal Procedure and that it further diminished the number of his peremptory strikes. He implicates Marquis' representation by stating that Marquis did not properly object to this matter. Six alternate jurors were selected in this trial; a number the court determined as

appropriate given the substantial length of the trial. O'Neill misunderstands the use of peremptory challenges as it relates to alternate jurors: Rule 24(c) directly provides for an increased number of strikes as the number of alternate jurors increases. *See* Fed. R. Crim. P. 24(c). Furthermore, the Seventh Circuit has determined that peremptory challenges have served their purpose when the jury ultimately selected is impartial. *United States v. Patterson*, 215 F.3d 776, 779 (7th Cir. 2000). The court continued that any "error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *Id.* at 781. The defendants enjoyed their substantial rights to an impartial jury, and Marquis was not ineffective for not challenging the court's method of identifying the alternate jurors, who were randomly selected by the defendants before the jury began their deliberations.

O'Neill argues that his appellate attorney was ineffective for failing to challenge the alternate juror selection process. O'Neill's claims for ineffective assistance of appellate counsel are without merit and justify little explanation. The right to the effective assistance of appellate counsel is evaluated in much the same way as the right to effective trial counsel; the court analyzes the petitioner's claims under the two-part *Strickland* test. *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996). However, the right to effective assistance of counsel does not require an appellate attorney to raise every single issue on appeal. *Id.* at 893. To satisfy the performance prong of *Strickland*, an appellate counsel need only raise those issues that are (1) significant and obvious and (2) clearly stronger than the issues raised. *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994). The alternate juror

selection process at trial was clearly in accordance with the Federal Rules of Criminal Procedure and the local rules; any appeal of this process would be wholly without merit, and O'Neill cannot claim that the alternate juror selection is significant, obvious, nor clearly stronger than the issues that were brought on appeal.

## IX.    Motion to Amend

On August 8, 2006, O'Neill filed a motion to amend based upon newly discovered evidence. In this filing, O'Neill alleges that the government withheld pertinent information relating to the Title III investigation. O'Neill frames his argument as a *Brady* violation, and also argues that his attorney was ineffective for failing to discover the government's supposed blunder earlier.

O'Neill's motion to amend relates to his 2002 Freedom of Information Act ("FOIA") request for information relating to pre-authorization eavesdropping. O'Neill's initial response from the Milwaukee FBI Field Office indicated that no records were found relating to the information he sought, and this finding was affirmed by the Department of Justice.  O'Neill then filed a subsequent request with the criminal division in Milwaukee; and although his brief does not indicate, it appears that this request was similarly fruitless.  O'Neill then references a FOIA request made by his co-defendant, Harvey Powers, in which Powers requested documents relating to image and wiretap interceptions.  In response to this request, a two-page teletype was released, which in relevant part stated:

> Captioned investigation is a joint endeavor with the Milwaukee division of Alcohol, Tobacco, and Firearms (ATF). Investigation relates to criminal activities of the Wisconsin Chapter of the Outlaw Motorcycle Gang, to include murder, attempted murder, bombing, and drug

distribution. Recently, ATF submitted an affidavit for microphone coverage in a Racine, Wisconsin residence. ATF has requested FBI expertise for the installation.

(O'Neill's Mot. to Amend, Ex. 1.11-1.12.)

O'Neill argues this newly discovered teletype amounts to a *Brady* violation because it shows that the government withheld favorable evidence. In order to establish a *Brady* violation, O'Neill must be able to show: (1) the evidence at issue was favorable to him either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) and prejudice must have ensued. *See Strickler v. Greene,* 527 U.S. 263, 281 (1999) (referencing *Brady v. Maryland,* 373 U.S. 83 (1963)).

To begin, the evidence is certainly not exculpatory. If it shows anything, it is simply that a home in Racine, Wisconsin was the potential target for an eavesdropping device. Furthermore, O'Neill has provided no evidence that this teletype was suppressed by the government or that they were even aware of its existence during the relevant discovery disclosure time frame. Finally, O'Neill is unable to establish that any prejudice ensued. Evidence is material and prejudice has ensued when a petitioner can show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler,* 527 U.S. at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). As noted on numerous prior occasions, the evidence seized and used against O'Neill and the co-defendants at trial was overwhelming. *See United States v. Warneke*, 310 F.3d 542 (7th Cir. 2002). The additional disclosure

of this teletype would not have changed the outcome. Once again, the matters relating to pre-authorization surveillance were thoroughly discussed by this court and the Seventh Circuit, and evidence of this kind would not have affected the findings that the Title III evidence was admissible and seized without violation of O'Neill's Fourth Amendment rights. Therefore, the court is obliged to deny O'Neill's motion to amend.

## X.    Other Filings

During the pendency of his petition, O'Neill filed several motions in connection with his petition, and the court will address these herein. First, he moved the court for an order to provide him with transcripts of various cases in different federal judicial districts across the country. The Supreme Court has held that an indigent habeas petitioner is not automatically entitled to transcripts to prepare and assist them with their petitions, and the court denies O'Neill's request. *See United States v. MacCollom*, 426 U.S. 317 (1975).

Next, O'Neill filed a motion for a preliminary injunction to preserve evidence. A party seeking to obtain a preliminary injunction must demonstrate: (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *See Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). Given the court's comments above regarding the merits of O'Neill's petition, the court finds that O'Neill's case does not demonstrate any likelihood of success on the merits, and the court is therefore obliged to deny O'Neill's request for a preliminary injunction.

O'Neill also requests that the court take judicial notice of matters of filed affidavits and correspondence from the FBI. These are matters that are inappropriate for judicial notice; therefore, the request will be denied. *See* Fed. R. Evid. 201.

Accordingly,

**IT IS ORDERED** that O'Neill's petition under 28 U.S.C. § 2255 be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that O'Neill's motion for a preliminary injunction [Docket # 18] be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that O'Neill's requests for judicial notice [Docket ## 20 and 21] be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Kevin O'Neill's motion to amend [Docket # 25] be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** with prejudice.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this   11th   day of July, 2007.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge